UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SAMMEL L. SUTTON,                                    :

            Plaintiff,                                    :

   -v.-                                                    :          <u>REPORT & RECOMMENDATION</u>

CITY OF YONKERS, et al.,                             :          13 Civ. 801 (GBD) (GWG)

            Defendants.                        :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff's attorney, Darryl Austin, has applied for attorney's fees and costs pursuant to

42 U.S.C. § 1988.[1]  For the reasons stated below, plaintiff should be awarded $56,086.04 in

attorney's fees and $1,987.81 in costs, for a total award of $58,073.85.  Also, of the $57,000

judgment against the defendants, $14,250 should be applied to satisfy the award of attorney's

fees.

I.    <u>BACKGROUND</u>

    A.    <u>Procedural History</u>

This case was brought under 42 U.S.C. § 1983 against the City of Yonkers, the Yonkers

Police Department, the County of Westchester, and individual police officers who arrested

---

[1]  Notice of Motion, filed July 1, 2016 (Docket # 79); Declaration of Darryl Austin, filed July 1, 2016 (Docket # 80) ("Austin Decl."); Memorandum of Law in Support of Plaintiff's Motion for Attorneys Fees and Costs Pursuant to 42 USC § 1988, filed July 1, 2016 (Docket # 81) ("Pl. Mem."); Declaration of Rory McCormick, filed July 22, 2016 (Docket # 86); Defendants' Memorandum of Law in Opposition of Plaintiff's Motion for Attorney Fees and Costs, filed July 22, 2016 (Docket # 87) ("Defs. Opp'n"); Letter from Darryl Austin, Esq., filed Aug. 1, 2016 (Docket # 89) ("Pl. Reply"); Letter from Darryl Austin, Esq., filed Oct. 27, 2016 (Docket # 91); Letter from Rory McCormick, filed Nov. 3, 2016 (Docket # 92); Letter from Darryl Austin, Esq., filed Nov. 8, 2016 (Docket # 93) ("2d Computer Letter").

plaintiff, Sammel L. Sutton, based on his alleged possession of a gravity knife. Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 (Prisoner Complaint), filed Feb. 4, 2013 (Docket # 2) ("Compl."). The Yonkers Police Department and the County of Westchester were later dismissed as defendants. (Docket ## 9, 35).

Sutton claimed that he was arrested without probable cause, was improperly strip searched at a precinct house, and then was subjected to excessive force. See Compl. ¶¶ 6-9. The criminal complaint, which charged Sutton with possessing a gravity knife, was eventually dismissed but not before Sutton spent a week in jail. See id. ¶ 12; Pl. Mem. at 1; Rule 56.1 Statement of Material Facts, filed May 30, 2014 (Docket # 30), ¶ 9; Defs. Opp'n at 4. When he filed the instant complaint in federal court, Sutton was incarcerated in the Westchester County Jail, see Compl. at 1 — apparently for a crime unrelated to the gravity-knife arrest underlying this case.

The defendants answered and the Court set a schedule under which pretrial discovery was to be completed by January 27, 2014. See Order, filed Sept. 27, 2013 (Docket # 19). After that deadline passed, the Court granted the plaintiff's application that the Court appoint counsel. See Order, filed Apr. 15, 2015 (Docket # 42). On May 12, 2015, Darryl Austin, Esq., entered an appearance on behalf of Sutton. See Notice of Appearance, filed May 12, 2015 (Docket # 43). Some discovery was conducted after Austin entered the case, including the depositions of two police officers and the production of documents by defendants. See Defs. Opp'n at 3; Austin Decl. ¶ 19. Additionally, the parties attended a settlement conference held by the Court on October 13, 2015. The only substantive motions filed after Austin entered the case were each party's motions in limine. (Docket ## 60, 62).

Trial began on June 6, 2016, and lasted three days. See Order of Judgment, filed June 30,

2016 (Docket # 78) ("Order J.").  Three witnesses testified: Sutton and the two defendant police

officers.  See Defs. Opp'n at 3; Pl. Reply at 3.  The jury returned a verdict for Sutton in the

amount of $57,000 for lost wages and for pain and suffering.  See Order J.  The verdict related

only to the false arrest claim.  Defs. Opp'n at 3; Pl. Mem. at 2-3.  Defendants prevailed on

plaintiff's claims of excessive force (which included the allegations regarding the strip search)

and a related claim of negligent training and supervision.  Defs. Opp'n at 3; see also Pl. Mem. at

2.

      B.    Request for Attorney's Fees

Sutton's attorneys seek compensation for 369.75 hours.  Austin seeks $425 per hour and

his associate, Douglas Doneson, seeks $315 per hour.  Sutton is seeking a total of $156,161.56 in

fees.  Sutton also requests $1,987.81 in costs, Pl. Mem. at 1; Austin Decl. ¶ 2; Pl. Reply at 15.[2]

There is no dispute that Sutton is a prevailing party.  Defs. Opp'n at 1, 2.  Further,

defendants concede that Sutton is entitled to some attorney's fees.  Id. at 2.  Defendants seek an

across-the-board 50% reduction in the hours claimed by Austin and elimination of the fee

claimed by the assisting attorney, Douglas Doneson.  Id. at 1, 4, 7, 11.

_____

[2]  Sutton initially sought attorney's fees for 324.9 hours of work performed by Austin and
for 27 hours of work performed by Doneson.  Austin Decl. ¶ 2.  In his reply memo, Sutton
requested an additional 25.1 hours for time spent working on the fee application.  Pl. Reply at
14.  He also agreed to reduce his request for 14.5 hours of travel time, which had been billed at a
full rate, by half.  Id.  Thus, the total is based on the following calculation:

Austin's fee: [324.9 original requested hours + 25.1 amended requested hours - 7.25
travel hours] = 342.75 hours x $425 = $145,668.75.
Doneson's fee: 27 hours x $315 = $8,505.
Costs: $1,987.81
Total requested: $145,668.75 + $8,505 + $1,987.81 = $156,161.56.

We assume the request for "$156,181.56." in Sutton's reply brief is a typographical error.  See
Pl. Reply at 15.

The parties' initial briefing did not address the applicability of the limitations contained in the portion of the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321-71 ("PLRA"), that is codified at 42 U.S.C. § 1997e(d).  Accordingly, the Court ordered them to brief this issue.  See Order, filed Nov. 23, 2016 (Docket # 94).  The parties submitted briefing in response.  See Letter from Darryl Austin, Esq., filed Dec. 8, 2016 (Docket # 95) ("Austin Letter"); Letter from Rory McCormick, filed Dec. 9, 2016 (Docket # 96); Letter from Rory McCormick, filed Dec. 16, 2016 (Docket # 98).  As described below, the PLRA significantly limits the hourly rate that may be sought by plaintiff's attorney.

II.    REQUIREMENTS OF FEE APPLICATIONS GENERALLY

A district court may award the prevailing party in a 42 U.S.C. § 1983 civil rights action — with certain limitations that do not apply here — reasonable attorney's fees.  See 42 U.S.C. § 1988(b); Hensley v. Eckerhart, 461 U.S. 424, 426, 437 (1983).  There is a presumption that a prevailing party is entitled to reasonable fees.  See Kassim v. City of Schenectady, 415 F.3d 246, 251 (2d Cir. 2005); Raishevich v. Foster, 247 F.3d 337, 344 (2d Cir. 2001) (citing Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982)).  The party seeking a fee award "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Hensley, 461 U.S. at 437; accord Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999).

To determine the fee award, a court must first calculate the "presumptively reasonable" attorney's fee in a given case, also known as the "lodestar," by multiplying the hours worked by an hourly rate.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186, 190 (2d Cir. 2008).  Both the hours worked and the rate charged per hour of work must be reasonable.  See Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)

4

(citing Arbor Hill, 522 F.3d at 183).  A reasonable hourly rate is what a "reasonable, paying client would be willing to pay."  See Arbor Hill, 522 F.3d at 184.  There is copious case law on determining such a rate, but given the applicability of the PLRA limitation we will not discuss it further.

Courts have also set forth requirements for documentation of time records.  "[A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records.  These records should specify, for each attorney, the date, the hours expended, and the nature of the work done."  N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); accord Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 148-49 (2d Cir. 2014).  With regard to the review of such records, a court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  However, "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application."  Carey, 711 F.2d at 1146 (collecting cases); accord Andrews v. City of New York, 118 F. Supp. 3d 630, 644 (S.D.N.Y. 2015).

As long as an attorney kept contemporaneous records of the hours expended while the work was completed, billing may be based on those records even if the records themselves are not used.  See Marion S. Mishkin, 767 F.3d at 149 (quoting Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994)).  Thus, reconstructions or transcriptions of originally kept records count as contemporaneous records.  Id. (citing David v. Sullivan, 777 F. Supp. 212, 223 (E.D.N.Y. 1991); and Lenihan v. City of New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986)).

III.     DISCUSSION

The principal disagreement between the parties is (1) whether the PLRA's limitations on attorney's fees should apply to this case, see 42 U.S.C. § 1997e(d); and (2) how many hours should be awarded.  We discus each issue next.  We conclude by applying a separate provision of the PLRA, 42 U.S.C.§ 1997e(d)(2), which requires that a portion of the judgment be applied to any attorney's fee award.

A.     Limitations Contained in 42 U.S.C. § 1997e(d)

While 42 U.S.C. § 1988 provides that a prevailing party in a 42 U.S.C. § 1983 civil rights action may recover reasonable attorney's fees, the PLRA places limitations on how much a prisoner-plaintiff may recover.  See 42 U.S.C. § 1997e(d)(2)-(3).  An award covered by the PLRA may not "be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel."  Id. § 1997e(d)(3).  The statute also limits the amount the defendant must pay in attorney's fees to a maximum of 150% of the judgment.  Id. § 1997e(d)(2); accord Shepherd v. Goord, 662 F.3d 603, 607 (2d Cir. 2011) ("[Section] 1997e(d)(2) caps the amount of attorney's fees that a prevailing prisoner-plaintiff may recover from a defendant at 150 percent of the monetary judgment awarded . . . .").  These limitations apply to "any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988."  42 U.S.C. § 1997e(d)(1)-(3).  The dispute between the parties is whether this case is an "action brought by a prisoner who is confined to any jail, prison or other correctional facility."  42 U.S.C. § 1997e(d).  It is undisputed that plaintiff was confined to a jail at the time the complaint was filed.  Plaintiff argues, however, that the statute applies only to plaintiffs who sue regarding matters that arose while the plaintiff was confined.

6

We begin our discussion with the text of the statute inasmuch as "[e]very exercise in statutory construction must begin with the words of the text." Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003) (citations omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) (citations omitted). "Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." United States v. Kozeny, 541 F.3d 166, 171 (2d Cir. 2008) (internal quotation marks omitted) (quoting United States v. Ron Pair Enters., 489 U.S. 235, 241 (1989); and citing Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)); accord Greenery Rehab. Grp. v. Hammon, 150 F.3d 226, 231 (2d Cir. 1998) (citing Rubin v. United States, 449 U.S. 424, 430 (1981)). We look to the legislative history and other tools of statutory construction only if the statutory terms are ambiguous. Greenery, 150 F.3d at 231 (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1073 (2d Cir. 1993)); accord United States v. Dauray, 215 F.3d 257, 260, 264 (2d Cir. 2000).

Here, the text of the statute is plain: it applies to "any action brought by a prisoner who is confined" to a jail. It is settled that the word "any" means "all" in this context. See United States v. Rodriguez, 775 F.3d 533, 537 (2d Cir. 2014) ("[W]hen the word 'any' is 'used as a function word to indicate the maximum or whole of a number or quantity,'. . . the word 'any' means 'all.'") (quoting United States v. Maxwell, 285 F.3d 336, 341 (4th Cir. 2002)). Thus, the statute contains no exception regarding the subject matter of the action — that is, whether it pertains to a prison condition or not. Indeed, the fact that it does not limit itself to suits regarding prison conditions is borne out by the fact that other provisions of the statute contain limitations for suits brought "with respect to prison conditions." See 42 U.S.C. § 1997e(a), (c),

7

(f).  Subsection 1997e(d), by contrast, contains no such limitation, strongly suggesting that Congress did not intend that it be so limited.  See City of Chicago v. Envtl. Def. Fund, 511 U.S. 328, 338 (1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.") (alteration in original) (internal quotation marks omitted) (quoting Keene Corp. v. United States, 508 U.S. 200, 208 (1993)); accord BFP v. Resolution Tr. Corp., 511 U.S. 531, 537 (1994).

Sutton makes no argument that the plain meaning of the language admits of any ambiguity.  See Austin Letter.  He does cite to one other case that has reached such a conclusion, however, Hall v. Galie, 2009 WL 722278 (E.D. Pa. Mar. 17, 2009).[3]  Hall concluded that, when read with the act as a whole, the PLRA's attorney's fee subsection did not apply to pre-incarceration actions.  2009 WL 722278, at *7.  Hall pointed to the first subsection of the statute, 42 U.S.C. § 1997e(a), which Hall viewed as "open[ing] with a specific prison conditions limitation on the scope of its applicability."  Id.  Hall then reasoned that this limitation applied to the entire statute.

We respectfully disagree with this aspect of Hall, 2009 WL 722278 at *7.  Subsection (a) of 42 U.S.C. § 1997e does indeed address itself to suits brought "with respect to prison conditions" — requiring that any administrative remedies be exhausted before such suits are brought.  But subsection (a) cannot reasonably be read to limit the entire section to prison conditions.  First, there was good reason why this subsection had to use the phrase "with respect to prison conditions," given that a prisoner would likely not have administrative remedies with

---

[3]  Another case on which he relies heavily is a panel decision that was later vacated.  See Robbins v. Chronister, 402 F.3d 1047 (10th Cir. 2005), rev'd en banc, 435 F.3d 1238 (10th Cir. 2006).  Because that decision was reversed by an en banc decision, we do not consider it further.

respect to any non-prison-related suit.

Moreover, this phrase — "with respect to prison conditions" — is used repeatedly in other subsections apart from subsection (d).  See 42 U.S.C. § 1997e(a), (c), (f).  If its use in subsection (a) was intended to apply to the entirety of § 1997e, there would have been no need to repeat it in these other subsections.  Additionally, Hall's analysis, 2009 WL 722278, at *5-6, is flawed because it relied in part on the Tenth Circuit's panel decision in Robbins, which had been reversed three years earlier.

Our reading of the statute is in accord with the Tenth and Eleventh Circuits, which have held that the plain language limiting attorney's fees in the PLRA applies to all litigation brought by prisoners while incarcerated, including those arising before the prisoner's incarceration.  See Robbins v. Chronister, 435 F.3d 1238, 1239 (10th Cir. 2006) (en banc) (section 1997e(d) applies to "suits on claims arising before the prisoner was incarcerated"); Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 796 (11th Cir. 2003) ("[I]t is apparent that § 1997e(d)'s phrase 'any action brought by a prisoner' means all lawsuits that are filed by a prisoner and is not restricted to lawsuits challenging 'prison conditions' that are filed by a prisoner.").

Sutton also points to Reyes v. Keane, 90 F.3d 676 (2d Cir. 1996), to argue that § 1997e(d) was not meant to apply to every type of action brought by a prisoner.  See Austin Letter at 3.  But Reyes held only that a habeas petition seeking to overturn a criminal conviction was not a "civil action" for purposes of a different section of the PLRA.  Reyes, 90 F.3d at 678. That portion of the statute is not at issue here.

Finally, Sutton argues that defendants have "waived" any objection based on § 1997e(d) to his requested attorney's fee award by not raising it in their initial briefing.  Austin Letter at 1. The statute's command is mandatory, however, and as one court has noted in rejecting a similar

argument, "the failure to apply the attorney's fee provisions of the PLRA would be considered

an abuse of discretion."  See Hightower v. Nassau Cty. Sheriff's Dep't, 343 F. Supp. 2d 191, 193

(E.D.N.Y. 2004) (citing Johnson v. Breeden, 280 F.3d 1308, 1327 (11th Cir. 2002)); accord King

v. Zamiara, 788 F.3d 207, 218 (6th Cir. 2015), cert. denied, 136 S. Ct. 794 (2016); Breeden, 280

F.3d at 1326-27.

 The current rates under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, are $127

per hour for work performed in 2015 and $129 per hour for work performed in 2016.  Guide to

Judiciary Policy, Vol. 7A, Ch. 2 § 230.16.  150% of these rates are $190.50 and $193.50.  In the

absence of the limitation, it is undisputed by defendants that the reasonable rate for both

attorneys would be well above these amounts.  Accordingly, we will use these rates in

calculating Sutton's entitlement to attorney's fees.

 B. Number of Hours

 Defendants argue that the total number of hours sought for matters other than the fee

application, which defendants at that point believed to be 325 hours, was unreasonable.  Defs.

Opp'n at 3-7.  While we agree that the number of hours expended approach the high end of

reasonableness given that there were only two depositions of defendants in this case, and only

four days of trial with three witnesses, we do not consider 325 hours to be outside the bounds of

reason.[4]  Defendants also point to some specific tasks for which Austin spent time that

---

 [4]  Austin's records from January 1, 2016, to April 30, 2016 — totaling 85 claimed hours — are estimations because a software malfunction caused him to lose his contemporaneous time records.  See Austin Decl. ¶ 14; Darryl Austin Time Sheet, (attached as Exhibit A to Austin Decl.) ("Time Sheet"), at *5.  Such hours would be non-compensable under normal circumstances.  See, e.g., Marion S. Mishkin, 767 F.3d at 149 (billing must be based on contemporaneous records).  But, as the Second Circuit has recognized, the strict requirement that an attorney supply contemporaneous records may be relaxed "where the records were consumed by fire or rendered irretrievable by a computer malfunction before counsel had an opportunity to

defendants contend were excessive.  Id. at 5-6.  We have considered defendants' arguments

regarding the number of hours spent on these tasks.  Id. at 6 (arguing, inter alia, that it was

unreasonable to spend five hours preparing for the officer defendants' depositions).  However,

we do not believe that the number of hours for any of them cross into the realm of

unreasonableness.

More significantly, defendants argue that there should be a reduction in hours because

Sutton did not prevail on his excessive force or negligent training claim.  Hours dedicated to a

"severable unsuccessful claim" may be excluded by a district court in determining the reasonable

fee.  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997).  Nonetheless, case law

makes plain that "[w]ork on ultimately unsuccessful claims is compensable as long as those

claims are not 'wholly unrelated' to the claims plaintiff succeeded on at trial."  Tatum v. City of

New York, 2010 WL 334975, at *3 (S.D.N.Y. Jan. 28, 2010) (quoting Lunday, 42 F.3d at 134).

Wholly unrelated claims are claims that, while brought against the same defendants, present

"distinctly different claims for relief that are based on different facts and legal theories."  See

Hensley, 461 U.S. at 434-35.  Additionally, a reduction is permissible even where there is a

"common nucleus of facts" among claims as long as there has been only limited success.

Kassim, 415 F.3d at 255.  As the Supreme Court has noted, "'the most critical factor' in

determining the reasonableness of a fee award 'is the degree of success obtained.'"  Farrar v.

---

prepare his application."  Scott v. City of New York, 626 F.3d 130, 134 (2d Cir. 2010).  Austin
has sufficiently documented this computer malfunction and that it arose as a result of no fault of
his own.  See 2d Computer Letter at *1-14.  Thus, we will accept his estimation of 85 hours
during this period.

Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436).[5]

Here, Sutton presented claims to the jury premised on two distinct factual situations: his claim of false arrest, and his claims of excessive force, which included a related claim of negligent training and supervision.  Defs. Opp'n at 3, 8-9; see Pl. Mem. at 2; Pl. Reply at 12.  The jury rejected the claims of excessive force and negligent training and supervision.  Defs. Opp'n at 3, 8-9; see Pl. Mem. at 2; Pl. Reply at 12.  It awarded damages only for the false arrest claim.  This represents a total failure to achieve success on two of the central claims in the case.

Sutton offers little in opposition to the defendants' argument.  While Sutton contends that the false arrest and subsequent excessive force claims are interrelated, his only non-conclusory argument on this point is that the excessive force claims "stem from the improper arrest."  But Sutton does not deny the defendants' statement that the excessive force allegedly perpetrated by the arresting officers did not occur at the scene as a result of effectuating the arrest, but rather occurred at the County jail.  Defs. Opp'n at 9; see also Compl. ¶¶ 6-9.[6]  Given that the claims involve two separate incidents at two different times, we conclude that they do not "involve a common core of facts" or "related legal theories."  Hensley, 461 U.S. at 435.  Nonetheless, given that the same officers are involved, and that much of the work spent litigating one claim would

--------

[5]  There is no requirement, however, that an attorney's fee award be proportionate to damages recovered at trial.  See, e.g., City of Riverside v. Rivera, 477 U.S. 561, 574 (1986) ("We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."); Kassim, 415 F.3d at 252 ("[W]e have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.") (collecting cases); Cowan v. Prudential Ins. Co. of Am., 935 F.2d 522, 527-28 (2d Cir. 1991) (holding that reducing attorney fee awards to be proportional to recovery is contrary to the purpose of awarding civil rights attorney's fees).

[6]  The Court notes that neither side has included the transcript of the trial in their submissions to the Court and the transcript has not been filed on the docket.

have overlapped with the other, it would be inappropriate to impose a large reduction for the lack

of success on the excessive force claims.  Accordingly, we conclude that a 15% reduction of the

billed hours should be applied.  See Tatum, 2010 WL 334975, at *11 (reducing the

presumptively reasonable fee by 15% where plaintiff prevailed on claim relating to an assault

but failed on negligent hiring and municipal liability claims); McDow v. Rosado, 657 F. Supp.

2d 463, 469 (S.D.N.Y. 2009) (reducing the reasonable fee by 12% where plaintiff was successful

on a false arrest and excessive force claim at trial but another false arrest claim had been

dismissed on summary judgment).

Defendants' remaining argument is that it would be unreasonable to award Austin's

associate 27 hours of time where the associate did not previously work on the case, spent only

three hours preparing for trial, and took no role at the trial itself.  Defs. Opp'n at 7.  Plaintiff's

reply papers do not address this point.  See Pl. Reply at 14 (stating only that "the time spent

assisting for trial by Douglas Doneson is also compensable time and proper").  In light of

Sutton's failure to offer any explanation or defense for seeking compensation for this

individual's participation, we agree that the time sought for this attorney should not be

compensated.

C.      Calculation of the Award

When the 50% reduction for travel time is included, we view Austin as requesting

payment for 342.75 hours.[7]  Of that time, 112.85 hours were spent in 2015 and 229.9 hours in

_____

[7]  Through June 13, 2016, Austin's 2015 time records reflect a total of 117.1 hours, and his 2016 time records reflect a total of 207.8 hours.  See Time Sheet at *5-7.  When the travel time is reduced by 50% (4.25 hours in 2015 and 3 hours in 2016), the time records reflect 112.85 hours in 2015 and 204.8 hours in 2016.  Austin then requested 25.1 hours spent on the fee application for work performed after June 13, 2016.

2016.  With the 15% reduction, the total number of compensable hours is 95.9225 in 2015 and 195.415 in 2016.  Applying 150% of the CJA rates, or $190.50 in 2015 and 193.50 in 2016, the total award is $56,086.04.[8]  This amount is less than the 150% cap mandated by § 1997e(d)(2) — which would be 1.5 times Sutton's $57,000 judgment, or $85,500 — and thus the cap does not come into play.

Because the application for costs has not been challenged and the amounts sought appear to be reasonable, Sutton should also be awarded costs in the amount of $1,987.81.  Thus, Sutton should be awarded $58,073.85 for costs and attorney's fees.

> D.    Application of 42 U.S.C. § 1997e(d)(2)

42 U.S.C. § 1997e(d)(2) provides that "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant."  The statute provides no explanation of how this "portion" is to be determined.  The Second Circuit has not decided any case that interprets this section of the PLRA, and thus has provided no guidance on its application.[9]

The Court has been able to locate eight decisions of district courts in this Circuit that have applied this provision.  The percentages they have awarded have varied widely, ranging

---

[8]  This total fee is based on the following calculation:

2015 Fees: 95.9225 hours x $190.50 = $18,273.24
2016 Fees: 195.415 hours x $193.50 = $37,812.80
Total Fees: $18,273.24 + $37,812.80 = $56,086.04.

[9]  In Shepherd v. Goord, 662 F.3d 603 (2d Cir. 2011), the Second Circuit affirmed a district court award that applied 10% of a $1.00 judgment to satisfy an attorney fee award of $1.50.  See id. at 604 n.1.  The application of § 1997e(d)(2), however, was not raised on appeal.  Id.  Thus, nothing in Shepherd represents a ruling on the propriety of such an award.

14

from almost nothing to 25%.  See Berrian v. City of New York, 2014 WL 6604641, at *4

(S.D.N.Y. Nov. 21, 2014) ($1 out of a $65,000 judgment); Hernandez v. Goord, 2014 WL

4058662, at *13 (S.D.N.Y. Aug. 14, 2014) (5%); Shepherd v. Wenderlich, 746 F. Supp. 2d 430,

433 (N.D.N.Y. 2010) (10% of a $1 judgment), aff'd, 662 F.3d 603 (2d Cir. 2011); Baez v.

Harris, 2007 WL 4556911, at *1 (N.D.N.Y. Dec. 20, 2007) (25%); Livingston v. Lee,  2007 WL

4440933, at *2 (N.D.N.Y. Dec. 17, 2007) (15%); Hightower, 343 F. Supp. 2d at 193 (about

10%); Beckford v. Irvin, 60 F. Supp. 2d 85, 89-90 (W.D.N.Y. 1999) (25%); Clark v. Phillips,

965 F. Supp. 331, 338 (N.D.N.Y. 1997) (25%).  These cases, however, have not articulated

principles as to how to implement the statute.  E.g., Shepherd, 746 F. Supp. 2d at 433 (applying

10% to a $1.00 judgment  "[f]or purposes of simplicity"); Clark, 965 F. Supp. at 338 (25% is a

"reasonable offset").  Two exceptions are the courts in Livingston and Hernandez, which applied

low or zero percentages to the punitive damage portion of the judgment, reasoning that it would

detract from the deterrent effect of such damages to allow defendants to apply a portion of a

punitive damage award toward their attorney fee obligation.  Punitive damages were not awarded

in Sutton's case, however.[10]

    Looking outside the Second Circuit, we have located two Circuit Court decisions that

speak to the application of the statute: Kahle v. Leonard, 563 F.3d 736, 743 (8th Cir. 2009), and

Murphy v. Smith, 2016 WL 7383746, at *6 (7th Cir. Dec. 21, 2016).

---

    [10]  Berrian involved an unusual situation in which a Rule 68 offer was accepted that
included an agreement to pay the offered amount of the judgment, "plus reasonable attorneys'
fees, expenses and costs to the extent, and only to the extent, that recovery of attorneys' fees,
expenses and costs is permitted by . . . 42 U.S.C. § 1997e."  2014 WL 6604641, at *2.  Berrian
applied only $1 of the judgment towards attorney's fees because it viewed the defendant as
having "agreed to pay reasonable attorneys' fees in addition to the amount it paid the Plaintiff."
Id. at *4.

In <u>Kahle</u>, the Eighth Circuit noted that "[n]either the statutory language nor the legislative history describes how a court sets an appropriate percentage under § 1997e(d)(2)." 563 F.3d at 742 (citation omitted). <u>Kahle</u> believed it was incumbent on courts to provide an explanation of the basis for any award of attorney's fees and therefore referred to the Eighth Circuit's "multi-factor test for determining whether and to what extent a prevailing party should receive attorneys' fees in ERISA cases." <u>Id.</u> at 743 (citation omitted). <u>Kahle</u> concluded that "[a]lmost all of the . . . factors" from the ERISA case applied to an evaluation of the § 1997e(d)(2) issue. <u>Id.</u>  The factors it listed are:

> (1) the degree of the opposing parties' culpability or bad faith, (2) the ability of the opposing parties to satisfy an award of attorneys' fees, (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances, and (4) the relative merits of the parties' positions.

<u>Id.</u>  These are similar to the factors that the Second Circuit has considered in determining whether to award attorney's fees in an ERISA suit.  <u>See</u> <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 815 F.2d 869, 871 (2d Cir. 1987); <u>accord</u> <u>Toussaint v. JJ Weiser, Inc.</u>, 648 F.3d 108, 110 (2d Cir. 2011) (per curiam).[11]

<u>Kahle</u> added that, as was true for ERISA cases, "[a] district court need not mechanically apply these factors."  563 F.3d at 743.  It also noted that a district court "has broad discretion in determining an appropriate percentage under § 1997e(d)(2)."  <u>Id.</u>  But <u>Kahle</u> gave no explanation as to why it was appropriate to apply the ERISA attorney-fee factors to the calculation required by § 1997e(d)(2).  And there are profound differences between ERISA and the PLRA that

---

[11]  Consideration of the ERISA factors is now of lesser significance following the Supreme Court's decision in <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 560 U.S. 242 (2010).  <u>See</u> <u>Donachie v. Liberty Life Assurrance Co. of Boston</u>, 745 F.3d 41, 46 (2d Cir. 2014) ("After <u>Hardt</u>, whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court <u>must</u> consider in exercising its discretion.") (emphasis in original).

counsel otherwise.  First, the ERISA statute gives discretion to courts as to whether an attorney

is to receive statutory fees at all.  See 29 U.S.C. § 1132(g)(1).  The decision required by

§ 1997e(d)(2), in contrast, assumes the plaintiff has been awarded fees and instead directs a court

to consider how much of the judgment will be applied to those fees.  But more importantly, the

purposes behind the fee provisions of ERISA and the PLRA are vastly different, and we view the

effectuation of the PLRA's purpose as critical to our construction of § 1997e(d)(2).  See

generally Castellano v. City of New York, 142 F.3d 58, 67 (2d Cir. 1998) ("Where the language

is ambiguous, we focus upon the 'broader context' and 'primary purpose' of the statute.")

(citation omitted).

        As the Second Circuit has noted, "Congress intended the fee provisions of ERISA to

encourage beneficiaries to enforce their statutory rights."  Donachie v. Liberty Life Assurance

Co. of Boston, 745 F.3d 41, 45-46 (2d Cir. 2014) (citation and internal quotation marks omitted).

Thus, in the ERISA context, "granting a prevailing plaintiff's request for fees is appropriate

absent some particular justification for not doing so."  Id. (citation and internal quotation marks

omitted).  The PLRA, by contrast, has a contrary purpose.  By its terms, the PLRA expresses a

strong purpose of discouraging suits by prisoner plaintiffs.  While the PLRA's purpose was

primarily to reduce only "marginal or frivolous" claims, Hadix v. Johnson, 230 F.3d 840, 845

(6th Cir. 2000), that purpose was effectuated by disincentivizing the pursuit of all lawsuits.  This

purpose is reflected in the fact that attorney's fees for successful suits are capped at 150% of the

amount of the judgment obtained, see 42 U.S.C. § 1997e(d)(2), and that the hourly rate that may

be awarded to attorneys in a successful suit is limited to 150% of the CJA rate, see 42 U.S.C.

§ 1997e(d)(3).[12]  As the Sixth Circuit has noted with respect to the attorney's fee cap, the

provisions placing limits on recovery of attorney's fees, "provide a counter-balance to a

prisoner's numerous incentives to litigate, thereby placing prisoner civil rights plaintiffs more

closely in the same decision making position as non-prisoner civil rights plaintiffs."  Hadix, 230

F.3d at 845 (citation omitted).  In other words, while ERISA's purpose was in part to encourage

successful litigation by plaintiffs, the statutory language of the PLRA reflects a purpose to

discourage all prisoner suits, including meritorious ones.

 For this reason, we believe it would be improper to apply the ERISA factors to determine

the percentage allocation required by § 1997e(d)(2).  Indeed, if the ERISA factors were used for

decisions under that section, it would have the practical effect of applying a very low percentage

of a judgment towards attorney's fees in virtually all cases.  This is because the prevailing

plaintiff in a prisoner civil rights suit almost always has proven intentional or reckless conduct, a

solvent municipality is almost always responsible for indemnifying the defendant, and the

requirement that a defendant pay attorney's fees will have a deterrent effect in every case.  Thus,

successful prisoner plaintiffs will routinely satisfy the ERISA test.  But to assume that Congress

intended in enacting § 1997e(d)(2) that such plaintiffs bear a minimal responsibility for

attorney's fees is not in keeping with the purpose of the PLRA.  In light of the different

treatment afforded plaintiffs in the two statutes, we respectfully disagree with Kahle, 563 F.3d at

743, in its application of the ERISA factors.

 The other circuit court to address the issue, the Seventh Circuit, has taken an almost

---

[12]  Another provision discouraging meritorious suits is the portion of the statute that
eliminates recovery for mental or emotional injury except where there has been physical injury.
See 42 U.S.C. § 1997e(e).

opposite view.  As reflected in two decisions, <u>Murphy</u>, 2016 WL 7383746, at *6, and <u>Johnson v. Daley</u>, 339 F.3d 582 (7th Cir. 2003) (en banc), the Seventh Circuit interprets the statutory text as requiring that 25% of the judgment <u>must</u> be applied to the attorney's fee award without exception.  While such a conclusion is far more in keeping with the purpose of the PLRA, the Seventh Circuit did not base its decision on an analysis of the statute's purpose.  Instead, it held that its ruling was mandated by the text of § 1997e(d)(2) itself.  Its reasoning on this point, however, does not hold up to scrutiny.  <u>Johnson</u> cited only <u>Gisbrecht v. Barnhart</u>, 535 U.S. 789 (2002), in support of its conclusion.  But <u>Gisbrecht</u> interpreted an entirely different statute with a different structure: 42 U.S.C. § 406(b)(1)(A).  While that statute allows a court to award up to 25% of a judgment in a social security case to satisfy attorney's fees, the statute does not provide for any attorney's fees to be paid by the defendant beyond the amount of the judgment.  Furthermore, <u>Gisbrecht</u> never suggested that 25% was a mandated amount.  The Seventh Circuit's later decision in <u>Murphy</u> adds little to the <u>Johnson</u> analysis, except to say that it did "not think the statute contemplated a discretionary decision by the district court.  The statute neither uses discretionary language nor provides any guidance for such discretion."  <u>Murphy</u>, 2016 WL 7383746, at *6.  We do not understand why it is significant, however, that the statute lacks "discretionary language."  This statement fails to address why 25% is the only correct "portion" of the judgment that should be applied when the statute states that the portion merely may "not . . . exceed 25 percent" and pointedly does not say that it must actually <u>be</u> 25%.  Similarly, the absence of "guidance" in the statutory text does not by itself indicate that the statute mandates an application of the maximum 25% figure.  Thus, we also must respectfully disagree with the reasoning of <u>Murphy</u>, 2016 WL 7383746, at *6, and <u>Johnson</u>, 339 F.3d at 584-85.  Our conclusion is bolstered by other circuit courts that have held a court has discretion to

19

apply percentages less than 25%.  See, e.g., King, 788 F.3d at 218; Parker v. Conway, 581 F.3d 198, 205 (3d Cir. 2009).

Looking to district court decisions outside the Second Circuit, we find that they too do not suggest an analytical framework to guide a court's application of § 1997e(d)(2).  Most decisions reference the court's discretion to determine an applicable percentage and then pick a number without further discussion or reasoning.  See Cleveland v. Curry, 2014 WL 789098, at *3 (N.D. Cal. Feb. 26, 2014); Barnard v. Piedmont Reg'l Jail Auth., 2009 WL 3416228, at *2 (E.D. Va. Oct. 21, 2009); Surprenant v. Rivas, 2004 WL 1858316, at *5 (D.N.H. Aug. 17, 2004), aff'd, 424 F.3d 5 (1st Cir. 2005); Cole v. Lomax, 2001 WL 1906275, at *6 (W.D. Tenn. Sept. 26, 2001).[13]

In the end, we conclude that the purpose of the PLRA in discouraging prisoner suits and in requiring that prisoners bear a portion of the cost of litigation points us to awarding 25% of the judgment as the best means of effectuating that purpose.  Other courts that have considered the purpose of the PLRA have reached a similar conclusion.  See Collins v. Chandler, 2009 WL 3459454, at *3 (D. Del. Oct. 28, 2009) (applying 25% after "[t]aking into consideration the Congressional intent that prisoners bear some burden of the cost of litigation"); Baez, 2007 WL 4556911, at *1 (applying 25% because it was "[i]n keeping with the intent of Congress to

---

[13] Some cases in Illinois in which pro bono counsel was appointed have allocated lower percentages on the theory that a low amount "recognizes Plaintiff's initial status as a pro se litigant[ and] that counsel was recruited for trial purposes on a pro bono basis."  Gevas v. Harrington, 2014 WL 4627616, at *3 (S.D. Ill. Sept. 16, 2014) (applying 10%); accord Cornell v. Gubbles, 2010 WL 3937597, at *2 (C.D. Ill. Sept. 29, 2010) (applying 1%); Farella v. Hockaday, 304 F. Supp. 2d 1076, 1081 (C.D. Ill. 2004) (applying 10%).  We do not understand the logic of this reasoning.  If the purpose of these courts was to incentivize the recruitment of pro bono counsel, the lower percentage does nothing to achieve that purpose.  This is because the percentage of the judgment allocated to attorney's fees has no effect whatsoever on the payment the attorney receives.  It affects only the amount a defendant is required to pay.

discourage prisoners from filing frivolous lawsuits"). Because the statutory text does not require application of the full 25% figure, we do not believe that this percentage is mandatory, however. We can imagine situations where a lower percentage might be appropriate — for example, to avoid diluting the deterrent value of a punitive damage award, as is sometimes mentioned in court decisions. See, e.g., Hernandez, 2014 WL 4058662, at *13 (applying 5% to punitive damage award); Livingston, 2007 WL 4440933, at *2 (applying 0% to the punitive damage award but 25% to the compensatory damage award). There also may be an unusual case in which a lower percentage is appropriate, such as where the defendant had already paid the plaintiff the judgment and applying a portion toward the attorney's fee might leave the attorney without a practical recourse for payment. In the typical case, however, we conclude that 25% of the judgment should be applied towards attorney's fees as this result is the best means of effectuating Congress's purpose in enacting the PLRA.

Accordingly, 25% of Sutton's $57,000 judgment — or $14,250 — should be applied towards the attorney's fees.

## IV.   CONCLUSION

Sutton's application for attorney's fees and costs (Docket # 79) should be granted against defendants in the amount of $58,073.85. Defendants should be permitted to apply $14,250 of the judgment amount to satisfy the award of attorney's fees.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d).

A party may respond to any objections within 14 days after being served.  Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. George B. Daniels at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections or responses must be directed to Judge Daniels.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: January 11, 2017
      New York, New York

 

GABRIEL W. GORENSTEIN
United States Magistrate Judge